UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Godelma Albores Flores,
Hugo Alfonso Albores,

        Petitioners/Plaintiffs,       **MEMORANDUM OPINION AND ORDER**
v.       Civil No. 10-2159 ADM/AJB

Jennifer Hartnett, Deportation Officer,
Immigration and Customs Enforcement,
Bloomington, MN; Scott Baniecke, Field
Office Director, Immigration and Customs
Enforcement, Bloomington, MN; and Janet
Napolitano, Secretary, Department of
Homeland Security,

        Respondents/Defendants.

_____

Bruce D. Nestor, Esq., De León & Nestor, LLC, Minneapolis, MN, on behalf of Petitioners.

Ana H. Voss, Assistant United States Attorney, Minneapolis, MN, on behalf of Respondents.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Petitioners Godelma Albores Flores ("Flores") and Hugo Alfonso Albores' ("Albores") (collectively "Petitioners") Petition for Writ of Habeas Corpus [Docket No. 1] pursuant to 28 U.S.C. § 2241 ("2241 Motion") and a complaint for declaratory and injunctive relief against the above-named defendants (collectively the "Government"). Petitioners have also presented a Motion for Temporary Restraining Order [Docket No. 3] to prevent their removal from the United States. The Government opposes the motions, arguing that this Court lacks jurisdiction. For the reasons set forth herein, Petitioners' 2241 Motion is dismissed and no declaratory relief will be ordered.

## II. BACKGROUND

The Petitioners, Flores and her son, Albores, are citizens of Mexico. Pet. for Writ of Habeas Corpus and Compl. [Docket No. 1] ¶¶ 1-2. On September 10, 1994, Petitioners, along with Flores's then husband, Jose Reyes Morales-Avalos ("Morales-Avalos"), sought to depart the United States and appeared at a port of entry in Canada to apply for asylum, purportedly as citizens of Guatemala. Defs.' Resp. to Pet. for Writ of Habeas Corpus [Docket No. 10] at 2. That same day, the United States Border Patrol personally served Petitioners with Orders to Show Cause why they should not be deported from the United States. Compl. ¶ 9. On approximately September 21, 1994, after notifying the United States Border Patrol, Petitioners left the United States and were admitted to Canada. Id. ¶ 10.

On August 23, 1995, after Petitioners did not appear for their scheduled deportation hearing, the Executive Office of Immigration Review ("EOIR") issued deportation orders *in absentia*. Id. ¶ 11. Petitioners' Canadian asylum applications were denied on September 5, 1995, and they reentered the United States shortly thereafter. Defs.' Resp. to Pet. for Writ of Habeas Corpus at 3. Morales-Avalos moved to reopen his removal order and filed for asylum, but Petitioners filed no such motion to reopen their removal orders. Compl. ¶ 13. The EOIR granted Morales-Avalos's motion to reopen on April 5, 1996 and granted his asylum application on January 16, 1998. Id. ¶¶ 13-14. Morales-Avalos filed derivative Refugee/Asylee relative petitions (Form I-730) on behalf of the Petitioners which were later approved. See id. ¶ 15.

On approximately July 13, 2004, after the Government discovered that Morales-Avalos fraudulently represented his nationality, Morales-Avalos was deported to Mexico and his prior grant of asylum was terminated. Id. ¶ 16. Petitioners filed motions to rescind and reopen the

1995 *in absentia* deportation orders, and the Board of Immigration Appeals ("BIA") denied those motions on August 13, 2009. Id. ¶ 17. The BIA held that: (1) Petitioners' 1995 Removal Orders were not automatically reopened or rescinded when Morales-Avalos's petition was reopened; (2) Petitioners' *in absentia* deportation orders were not automatically rescinded by the granting of their derivative asylee status; (3) Petitioners' derivative asylee status was terminated upon the termination of Morales-Avalos's asylee status; and (4) Petitioners' motion to reopen was properly denied because it was untimely and failed to demonstrate lack of notice or exceptional circumstances that would excuse their failure to appear. Voss. Decl. [Docket No. 11] Ex. 1. Petitioners did not appeal the BIA's order. Petitioners filed a habeas petition in this Court on May 26, 2010.

Because Petitioners have been under an Order of Supervision since June 23, 2006, on May 11, 2010, they reported as directed to the Immigration and Customs Enforcement ("ICE") Office in Bloomington, Minnesota, where they were informed they would have to self-deport from the United States before June 17, 2010, or be physically detained and removed from the United States. Id. ¶¶ 18-19. After Petitioners filed their motion for a temporary restraining order, ICE postponed the removal deadline until September 17, 2010. Defs.' Resp. to Pet. for Writ of Habeas Corpus at 5.

### III. DISCUSSION

**Jurisdiction under the Real ID Act**

The Government argues that the Real ID Act of 2005 deprives this Court of subject matter jurisdiction over this case. In 2005, Congress passed the REAL ID Act, Pub. L. No. 109-13, Div. B., 119 Stat. 302 (2005), attempting to channel legal challenges to orders of removal to

3

a single forum. The Real ID Act explicitly limits habeas jurisdiction of the district courts in immigration cases. The Real ID Act provides, in pertinent part:

> (5) Exclusive means of review
>
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section. For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5).

Section 1252(b)(9) provides:

> (9) Consolidation of questions for judicial review
>
> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Petitioners argue that the Real ID Act allows district courts to retain jurisdiction over matters independent of challenges to removal orders. The case law supports district court

jurisdiction over claims that are found to be independent of removal challenges. See, e.g., Singh v. Chertoff, No. C05-1454, 2005 WL 2043044, at *3 (N.D. Cal. Aug. 24, 2005) (holding that termination of petitioner's asylum status falls outside the scope of the jurisdictional bar of the Real ID Act); Harrison v. Hogan, No. Civ. 1:CV-05-1376, 2005 WL 2020711 (M.D. Pa. July 18, 2005) (retaining jurisdiction over petitioner's habeas challenge of detention); Kanteh v. Ridge, No. Civ. 05-313, 2005 WL 1719217, at *4 (D. Minn. June 30, 2005) (transferring the portion of petitioner's case that sought review of removal order to the court of appeals, but retaining jurisdiction over petitioner's challenge of his continued detention). Thus, the propriety of this Court's jurisdiction pursuant to the Real ID Act depends on the nature of Petitioners' claim.

The precise issue Petitioners challenge is whether their departure from the United States in 1994 to seek asylum in Canada, after service of an Order to Show Cause but before the final orders of removal were issued, constitutes self-execution of the deportation order. Petitioners argue that since they left the United States before the final order of removal, they may not be deported pursuant to that same order unless ICE reinstates the order as required by 8 U.S.C. § 1231(a)(5).[1] The Government contends that the statutory and regulatory language governing self-removal presumes a final order of removal is entered before it can be executed. Therefore, the Government contends, the removal orders have never been executed and can now

---

[1] 8 U.S.C. § 1231(a)(5) allows an alien to "be removed under the prior [removal] order at any time after the reentry," but only "[i]f the Attorney General finds that [the] alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." In particular, the implementing regulation for the statute indicates that before reinstating a removal order an immigration officer must determine that: (1) "the alien has been subject to a prior order of removal"; (2) "the alien is in fact an alien who was previously removed, or who departed voluntarily under an order of exclusion, deportation or removal"; and (3) "the alien unlawfully reentered the United States." 8 C.F.R. § 241.8(a).

be executed for the first time.

Congress's purpose in enacting section 1252(b)(9) is evident. As its text makes clear, that provision was designed to consolidate and channel review of *all* legal and factual questions, including constitutional and statutory challenges, that arise from the removal of aliens into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals. 8 U.S.C. § 1252(b)(9); see Singh v. Gonzales, 499 F.3d 969, 976 (9th Cir. 2007) ("Through this section [§ 1252(b)(9)], 'Congress made clear that review of a final removal order is the only mechanism for reviewing any issue raised in a removal proceeding.'" (quoting H.R. REP. NO. 109-72, at 173 (2005) as reprinted in 2005 U.S.C.C.A.N. 240, 298)). "[The provision's] expanse is breathtaking." Aguilar v. U.S. Immigration and Customs Enforcement Div. of the Dep't of Homeland Sec., 510 F.3d 1, 9 (1st Cir. 2007).

Resolving whether Petitioners' departure prior to the issuance of the 1995 deportation orders constitutes self-execution of the removal orders or whether the 1995 deportation orders are valid, outstanding orders requires interpreting and applying statutory and regulatory provisions, specifically 8 U.S.C. § 1101 (g)[2] and 8 C.F.R. § 241.7.[3] Furthermore, Petitioners are directly challenging whether the 1995 deportation order has already been executed. Petitioners'

---

[2] Section 1101(g) provides:

> For the purposes of this chapter any alien ordered deported or removed . . . who has left the United States, shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed.

[3] 8 C.F.R. § 241.7 provides in relevant part: "Any alien who has departed from the United States while an order of deportation or removal is outstanding shall be considered to have been deported, excluded and deported, or removed . . . ."

argument that the 1995 orders should no longer be considered extant because they were executed when Petitioners legally left the United States is inextricably intertwined with the 1995 orders' present legal status. These claims are not "independent of, or wholly collateral to, the removal process[,]" and thus fall within the ambit of the channeling statute. Aguilar, 510 F.3d at 11. In passing the Real ID Act, Congress clearly intended that all challenges to removal orders be heard in a single forum: the courts of appeals. See Bonhometre v. Gonzales, 414 F.3d 442, 446 (3d Cir. 2005) (citing H.R. Conf. Rep. No. 109-72, at 174 (2005)), U.S. Code Cong. & Admin. News 2005, pp. 240, 298-99. Accordingly, this Court lacks jurisdiction to hear Petitioners' challenge related to the 1995 deportation order and review can only be by the court of appeals.[4]

Petitioners next argue that 8 U.S.C. § 1252(f)(2) establishes jurisdiction in this Court. Subsection (f) is titled "Limit on injunctive relief." Subsection 12(f)(2) is titled "Particular cases" and provides:

> Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the

---

[4] Petitioners filed motions to rescind and reopen their removal orders with the BIA which were denied on August 13, 2009. Petitioners could have sought review of their final orders of removal under the provisions of § 1252 if they had timely filed a petition for review of the BIA decision in the court of appeals. See 8 U.S.C. § 1252(a)(2)(D) (under the Real ID Act, a court of appeals may consider all "constitutional claims or questions of law . . ."); see also Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 495 (1999) (Ginsburg, J., concurring in part and concurring in judgment) (stating that "judicial review of 'all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the hearing'" is authorized) (citing INS v. Chadha, 462 U.S. 919, 938 (1983)). Petitioners argue that the Suspension Clause would be violated by a finding that this Court lacks subject matter jurisdiction over this case because it would leave Petitioners without any avenue for seeking relief. However, the arguments raised in this petition could have been made on a petition for review. "Simply because the [Petitioners] failed to make a known argument during their prior proceedings does not mean that we must grant them a second bite at the apple to satisfy the Suspension Clause's requirements." Muka v. Baker, 559 F.3d 480, 486 (6th Cir. 2009).

7

entry or execution of such order is prohibited as a matter of law.

Petitioners argue they have satisfied the "clear and convincing standard" because the orders of removal have already been self-executed, and ICE cannot now deport them without complying with 8 U.S.C. § 1231(a)(5). In Reno v. American-Arab Anti-Discrimination Committee, the Supreme Court discussed a slightly different version of subsection 1252(f) and found that "'[b]y its plain terms, and even by its title, that provision is nothing more or less than a limit on injunctive relief. . . . To find in this an affirmative grant of jurisdiction is to go beyond what the language will bear." Reno, 525 U.S. at 481-82. Petitioners' attempt to establish jurisdiction in this Court pursuant to § 1252(f)(2) fails. See Cadogan v. United States, Civ. No., 09-10243, 2009 WL 1447879, *2 (E.D. Mich. May 22, 2009) (rejecting Plaintiff's argument that the "clear and convincing" standard was satisfied because the state court allegedly failed to consider his Batson[5] claims).

The Eighth Circuit has recently held that a petitioner's failure to timely petition for review of a final removal order deprives a district court of jurisdiction to reach the merits of any claim that would frustrate or interfere with the Government's action to execute that order. Lang v. Napolitano, 596 F.3d 426, 428-29 (8th Cir. 2010) ("If a final order of removal is upheld on review, or if review is not timely sought, 'no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action . . . to . . . execute removal orders against any alien under this chapter.'") (citing § 1252(g)). Petitioners did not seek judicial review of the BIA decision. Instead, they filed this habeas case and seek a restraining

---

[5] Batson v. Kentucky, 476 U.S. 79 (1986).

order or injunctive relief. Thus, under Lang, this Court is without jurisdiction to hear "any cause or claim" that would interfere with the Government's action to execute the removal order. Id.

Finally, the issue raised in Petitioners' request for a temporary restraining order and/or preliminary injunction includes review of the removal order, and is not an independent challenge to Petitioners' detention but rather, another way to challenge the removal. See Saavedra De Barreto v. Immigration and Naturalization Service, 427 F.Supp. 2d 51, 58 (D. Conn. 2006). Retaining jurisdiction would violate the jurisdiction stripping provisions of § 1252. To the extent that Petitioners' request may be construed as seeking a stay of removal, many district courts have held that § 1252 necessarily deprives district courts of jurisdiction to review the merits of a habeas petition challenging a removal order or to grant stays of removal in such cases. Aime v. Dep't of Homeland Security, No. 05-CV-05442, 2005 WL 1971894, *1 (W.D.N.Y. Aug. 16, 2005) ("since petitioner challenges an order of removal within the meaning of the REAL ID Act, § 106(b) . . . this Court has no jurisdiction to review the merits of the petition or to stay the order of removal."); Munoz v. Gonzalez, No. 05 Civ. 6056 (SHS), 2005 U.S. Dist. LEXIS 14014 (S.D.N.Y. July 11, 2005) (district court lacks jurisdiction to review merits of a petition challenging a removal order or to stay the order of removal).

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioners' Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1] is **DISMISSED** for lack of jurisdiction and the request for a temporary restraining order [Docket No. 3] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

                                                BY THE COURT:

                                                s/Ann D. Montgomery
                                            ANN D. MONTGOMERY
                                            U.S. DISTRICT JUDGE

Dated: August 18, 2010.